Rosetta **BROCK**, et al., Plaintiffs–Appellants,

. v.

Ned Ray **McWHERTER**, et al., Defendants–Appellees.

No. 94–6558.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 1, 1996.

Decided Aug. 30, 1996.

---

Ward S. Whelchel (briefed), Knoxville, TN, David H. Dunaway (argued and briefed), La-Follette, TN, for Plaintiffs–Appellants.

Dianne Stamey Dycus, Asst. Atty. Gen. (briefed and argued), Office of the Atty. Gen., General Civ. Div., Nashville, TN, for Defendants–Appellees.

Before: NORRIS and MOORE, Circuit Judges; MILES, District Judge.*

ALAN E. NORRIS, Circuit Judge.

In this action brought under 42 U.S.C. § 1983, plaintiffs claim a Due Process Clause violation because of the alleged failure of defendant state officials to administer properly a state-sponsored disability compensation fund. For the following reasons, we

---

* The Honorable Wendell A. Miles, United States District Judge for the Western District of Michigan, sitting by designation.

affirm the district court's dismissal of the action.

## I. Facts

Under Tennessee's Workers' Compensation Law, a partially and permanently disabled employee who becomes totally and permanently disabled due to a subsequent work-related injury, qualifies for workers' compensation. Tenn. Code Ann. § 50–6–208. Compensation paid to the employee from the employer's workers' compensation insurance plan is limited, however, to the extent of the subsequent or "second" injury, while compensation attributable to the prior disability is paid from a special state program called the Second Injury Fund ("SIF"). According to plaintiffs, this statutory scheme is designed to encourage employers to hire workers who have existing disabilities.

Tennessee state courts determined that each of these plaintiffs was eligible to receive compensation from SIF. However, because SIF ran short of funds prior to the end of the 1993–94 fiscal year, they did not receive timely payment of the compensation due them.

Plaintiffs filed suit under § 1983, claiming that the defendant state officials deprived them of their right to due process by pursuing a course of conduct that depleted SIF in violation of Tennessee law. In essence, plaintiffs alleged that defendants wrongfully permitted monies collected from SIF's statutory funding sources to be turned over to the state's general revenue fund, rather than automatically deposited directly into SIF for disbursement to plaintiffs. Plaintiffs also alleged that defendants illegally transferred funds that had already been deposited into SIF to the state treasury. Although the legislature eventually appropriated sufficient funds so that SIF could meet its obligations for fiscal year 1993–94, plaintiffs argued that defendants' conduct is ongoing and continues to leave SIF without sufficient funding to make timely payments to SIF beneficiaries. Plaintiffs requested declaratory and injunctive relief against defendants requiring them to conform their conduct to plaintiffs' inter-

pretation of the SIF funding mechanism and to compel them to secure and return to SIF any funds wrongfully transferred to the state's general revenue fund.

The district court granted defendants' motion to dismiss on the grounds that plaintiffs failed to state a claim under § 1983 and because the action was barred by the Eleventh Amendment.

## II. Discussion

■■■■ Because the district court dismissed plaintiffs' § 1983 action pursuant to Fed.R.Civ.P. 12(b)(6), we review the decision de novo. *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 296 (6th Cir. 1993). The allegations of the complaint must be construed in a light most favorable to plaintiffs. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994). Dismissal is improper unless it is clear that plaintiffs can prove no set of facts that would support their claim. *Id.*

■■■ To state a § 1983 claim, plaintiffs must allege sufficient facts that, if true, would establish that defendants deprived them of a right secured by the Constitution or the laws of the United States, and that this deprivation was carried out by defendants acting under color of state law. *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). Plaintiffs allege that defendants violated the Due Process Clause of the Fourteenth Amendment by depriving them of a property right to continued periodic payment of workers' compensation disability benefits without due process.[1] They also allege that defendants engaged in that conduct while acting under color of state law. As there appears to be no question that defendants were engaged in official duties when overseeing SIF, the issue on appeal is whether plaintiffs alleged sufficient facts to establish a procedural due process violation.

■■■ "The Fourteenth Amendment's procedural protection of property is a safe-

---

1. Although plaintiffs' amended complaint fails to distinguish between the procedural and substantive components of the Due Process Clause, we review their claim as alleging a violation of the right to procedural due process because plain-

tiffs' appellate brief states, "Once Appellants became entitled to their statutory benefits, these rights could not be deprived except pursuant to Constitutionally (sic) adequate procedures."

guard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). The existence of a protected property interest is the threshold determination in any procedural due process claim. *Howard v. Grinage*, 82 F.3d 1343, 1349–50 (6th Cir.1996). "Whether such a guarantee has been given can be determined only by an examination of the particular statute[s] or ordinance[s] in question," *Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976), because protected property interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents*, 408 U.S. at 577, 92 S.Ct. at 2709.

■ Plaintiffs contend that as the result of the state court decrees proclaiming them eligible to receive SIF benefits, and in view of the statutes creating SIF and defining its funding sources, they enjoy "certain property rights" in an uninterrupted flow of periodic workers' compensation disability payments from SIF. It seems to us that plaintiffs are laying claim to two distinct property interests. The first claim is to an entitlement to participate in SIF: if plaintiffs have no right to participate in SIF, they have no right to any specific amount of SIF compensation. The second claim is to an entitlement to a fully funded SIF program, since only a fully funded program can guarantee claimants uninterrupted disability payments. Our examination of the statutes creating and defining the SIF program leads us to agree with defendants that, while these statutes may entitle plaintiffs to participate in the SIF program, they do not guarantee that the SIF program will always be fully funded.

Under Tenn. Code Ann. § 50–6–206, courts by decree "determine the right of the claimant to receive compensation from [SIF]." Eligible claimants then present their court decree to the director of SIF who must disburse SIF funds "in accordance with the decree." Tenn. Code Ann. § 50–6–208(e). A fair reading of these statutes indicates that once a claimant is in possession of such a decree, as are all plaintiffs in this case, the claimant enjoys an entitlement to participate in the SIF program.

Plaintiffs do not contend that defendants denied them the right to participate in SIF. Rather, they argue that defendants denied them the right to a fully funded SIF program. According to plaintiffs, this right is created by statutes which provide two funding sources for SIF. The primary source of SIF funding is derived from a four percent tax on workers' compensation insurance premiums imposed by Tenn. Code Ann. § 50–6–401(b). Subsection (c) of § 50–6–401 provides that from this premium tax "a sum sufficient shall be allocated from and equal to an amount not greater than fifty percent (50%) ... [which] shall be paid into the second injury fund." Subsection (e) of § 50–6–208 further provides that the "sums collected by the director [of the division of workers' compensation] ... shall be deposited in [SIF] ... and disbursed by the director only for purposes stated in this section and shall not be appropriated or diverted to any other purpose." SIF's second funding source results from the requirement that the division of workers' compensation of the department of labor establish and collect various insurance related penalties, and that these penalties "shall be paid into and become a part of the second injury fund." Tenn. Code Ann. § 50–6–118(a) and (b).

Plaintiffs assert that these statutes require defendants to deposit the premium taxes and penalties directly into SIF to cover disbursements. Thus, they interpret the funding statutes as providing an "automatic flow of money into the fund," without any resort to the state's normal budgetary and appropriation processes or opportunity for the legislature to exert control over these taxes and penalties from the moment they are collected. It also follows from this interpretation, that once deposited in SIF, such funds may not be removed and used for other legitimate state purposes. Plaintiffs' violation of due process theory hinges on this interpretation,

since they claim defendants have acted contrary to Tennessee law by collecting the penalties and taxes on premiums and depositing them in Tennessee's general revenue fund rather than automatically depositing the money in SIF. This is the conduct that plaintiffs say leaves SIF under funded and deprives plaintiffs of their entitlement to a fully funded program.

■ We do not read the statutes as providing an automatic flow of money into SIF independent of the budgetary and appropriations processes. It seems clear to us that the Tennessee constitution and statutes contemplate that SIF's funding sources are subject to normal budgetary and appropriations processes which may at times leave the program under funded. The premium tax is a fee that is collected by the commissioner of commerce and insurance and must be paid "at once" into the state treasury pursuant to § 8–22–118.[2] Once collected, no part of the premium tax can be spent without legislative and executive acquiescence, because Article II, § 24, of the Tennessee Constitution provides that "[n]o public money shall be expended except pursuant to appropriations made by law." Hence, § 50–6–401(b) (which is repeated with no substantive change at § 50–6–208(c)) clearly contemplates that the normal budgetary and appropriations process will determine how much of the premium tax will be deposited in SIF.[3] Consequently, and contrary to plaintiffs' contentions, the statutes do not secure for workers an entitlement to a program that will never be without funds. Rather, by calling upon the workers' compensation department and the legislature to estimate a "sum sufficient" of money which during each budgetary cycle will be adequate to fund SIF, and then "earmarking" the premium tax as the source of the amount estimated only so long as that amount does not exceed fifty percent of the

tax collected, the legislature clearly contemplated that estimates may be faulty, liabilities may outdistance funding, and payments may be late. The statutes do not, therefore, conflict with or override budgetary and appropriation processes provided for by the state's constitution and laws, and do not bestow upon plaintiffs an entitlement to a fully funded SIF program.

Likewise, the insurance penalty provisions found in § 50–6–118 do not lend support to plaintiffs' argument that they are entitled to a fully funded SIF program. The penalties are public money which may not be spent without an appropriation, Tenn. Const. art. II, § 24, and plaintiffs point us to no Tennessee laws indicating that these funds are to be treated any differently from other funds that must be submitted to the general fund prior to appropriation by the legislature.

It follows, too, that a return to the general fund of surplus SIF funds does not violate § 50–6–208(e)'s directive that premium tax funds allocated to SIF "shall not be appropriated or diverted to any other purpose." The obvious intent of this subsection is that funds appropriated by the legislature to SIF are to be spent only to satisfy SIF liabilities. This section does not, however, forbid transfers accomplished through normal state financial practices. In any event, plaintiffs do not contend that any such funds transferred from SIF to the state treasury were subsequently spent for non-SIF purposes.

Finally, the statutes creating and funding SIF must be read in conjunction with Tenn. Code Ann. § 9–1–116, which limits the dimensions and scope of entitlements provided under Tennessee law. Section 9–1–116 provides:

> (a) Notwithstanding any other provision of the law to the contrary, availability of programs and services to people in this state shall be limited to the extent that funds

---

2. Tenn. Code Ann. § 8–22–118 provides in pertinent part:

> **Fees of state offices accruing to state.**
> All fees, costs, emoluments, perquisites, and commissions appendant, or that may accrue from any source whatever, ... to the office of commissioner of commerce and insurance ... are declared to be the property of the state, and each of the above named officers shall

collect the fees ... and pay the same over at once to the state treasurer, to be used as part of the revenue of the state.

3. While § 50–6–208(d) allocates to SIF all fifty percent of the premium tax, this appropriation was effective only for the enacting legislature, since legislatures are under no obligation to appropriate funds at levels set by prior legislatures.

are appropriated by the general assembly or the appropriate governing body of a political subdivision.

(b) No person shall be entitled to have made available to them, or otherwise entitled to, any program or any services provided by or through the state, its departments, agencies or political subdivisions unless funds remain available for such programs or service from moneys appropriated for that purpose by the general assembly or the appropriate governing body of a political subdivision.

Tennessee law could not be more explicit in pointing out that there is no basis for recognizing the existence of a property interest in a fully funded SIF program. In this respect, plaintiffs' case is little different from *Dowling v. Davis*, 19 F.3d 445 (9th Cir.1994). In *Dowling*, beneficiaries of a California state program funding in-home support services sued the state when the legislature failed to adopt a timely budget which resulted in delayed payment of benefits to recipients. Interpreting California law as effectively terminating the program in the absence of an appropriation from the legislature, the Ninth Circuit held that California law did not give program recipients a property interest in continued funding of the program. *Id.* at 448.

In sum, we discern no guarantee to plaintiffs that SIF will not be under funded. The "earmarking" language in the statutes relied upon by plaintiffs is the expression by one session of the legislature that subsequent ones should give priority to devoting certain revenues to certain expenditures by exempting them from the normal give and take of the legislative process; that SIF should have "first call" on these revenue sources. Such expressions are not binding directives insofar as subsequent sessions of the legislature are concerned, since they are always free to amend or repeal the statutes. Should a subsequent session of the legislature appropriate less money to SIF than contemplated by the earlier session, that appropriation legislation has the practical effect of amending the statutes. Indeed, plaintiffs do not contend they could sue the legislature for failure to fund SIF fully. Moreover, Tennessee law affirmatively conditions entitlements to programs like SIF on funds made available through normal budgetary and appropriations processes.

The statutes creating and defining SIF must be read with a view to common sense, and in the context of the legislative and financial practices of state government as provided by the laws and constitution of Tennessee. Payment of disability benefits under Tennessee law is contingent upon funds being made available through normal government processes. Accordingly, while it is a manner of vital concern to SIF claimants that the SIF program be fully funded so that their court-validated claims for compensation can be satisfied in a timely manner, their concern does not amount to the kind of entitlement that will ground a § 1983 claim based upon a denial of federal due process rights.

### III. Conclusion

In view of our holding that plaintiffs' complaint was properly dismissed for failure to state a claim under § 1983, we need not address the other substantial hurdles standing in plaintiffs' way, namely, the district court's alternative holding that plaintiffs' claim is barred by the Eleventh Amendment and the effect of plaintiffs' concession that, since this lawsuit was filed, the Tennessee legislature has appropriated sufficient funds to pay all SIF claims to date.[4]

The decision of the district court is **affirmed**.

---

4. Plaintiffs also state no claim under 42 U.S.C. § 1985 or § 1986 because these statutes require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).