*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0319P (6th Cir.)
File Name: 02a0319p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LLOYD D. ALKIRE,
     *Plaintiff-Appellant,*

     *v.*

JUDGE JANE IRVING, *et al.,*
     *Defendants-Appellees.*

No. 00-4567

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 96-02687—David D. Dowd, Jr., District Judge.

Argued: March 6, 2002

Decided and Filed: September 18, 2002

Before: MOORE and COLE, Circuit Judges; TARNOW,
District Judge.

———————————

**COUNSEL**

**ARGUED:** Gary M. Smith, EQUAL JUSTICE
FOUNDATION, Columbus, Ohio, for Appellant. Timothy T.
Reid, REID, BERRY, MARSHALL & WARGO, Cleveland,

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

Ohio, for Appellees. **ON BRIEF:** Gary M. Smith, EQUAL JUSTICE FOUNDATION, Columbus, Ohio, Edward A. Icove, SMITH & CONDENI, Cleveland, Ohio, for Appellant. Timothy T. Reid, REID, BERRY, MARSHALL & WARGO, Cleveland, Ohio, for Appellees.

————————

**OPINION**

————————

## I. INTRODUCTION

ARTHUR J. TARNOW, District Judge. Plaintiff Lloyd D. Alkire was arrested for drunk driving and held almost seventy-two hours without a probable cause hearing. He was subsequently incarcerated for failure to appear for show cause hearings and failure to pay fines and court costs. Alkire sued defendants Holmes County, Judge Jane Irving, Holmes County Court, and Sheriff Timothy Zimmerly under 42 U.S.C. § 1983, arguing that his constitutional rights were violated by his warrantless detention and civil debt-related incarceration. After a partial settlement disposed of several issues in the case, the district court denied Alkire's summary judgment motion and granted defendant's summary judgment motion on the remaining constitutional issues raised. The district court also denied Alkire's class certification motion. This appeal followed.

Alkire raises five issues in his appeal. The first four ask whether the district court properly denied Alkire's summary judgment motion and granted defendant's summary judgment motion as to the liability of Holmes County and Sheriff Zimmerly for violating Alkire's: (1) Fourth Amendment right not to be held on a warrantless arrest without arraignment for forty-eight hours; (2) Thirteenth Amendment right not to be imprisoned for a civil debt; (3) Fourteenth Amendment right to due process and equal protection for failing to allow credit toward fines and costs for time served; and (4) Fourteenth Amendment right not to lose his liberty due to indigency. The fifth issue on appeal is whether the district court properly

class action is a superior method for adjudication. Consequently, Alkire's argument that only one common question is necessary for class certification does not apply under the type III analysis. The district court's finding that numerous factual issues, such as varying reasons for arrest, varying lengths of stay, and varying financial situations "do not warrant class treatment" is even stronger when reviewed under the type III requirements. Accordingly, we affirm the district court's denial of Alkire's motion for class certification.

### VI.  CONCLUSION

For the foregoing reasons, we REVERSE the district court with respect to its grant of defendant's summary judgment motion as to the liability of Sheriff Zimmerly and Holmes County for potentially violating Alkire's Fourth Amendment right not to be detained more than forty-eight hours without a probable cause hearing and REMAND for further proceedings. We AFFIRM the district court on its grant of defendants' summary judgment motions on the other three constitutional issues. We also AFFIRM the district court's denial of Alkire's motion for class certification.

denied Alkire's motion for class certification. For the reasons stated below, we **REVERSE** the district court on the first issue and **REMAND** to the district court for further proceedings. We **AFFIRM** the district court on the second, third, fourth, and fifth issues.

### II.  FACTUAL HISTORY

On Saturday, August 19, 1995 at 9:40 a.m., plaintiff Lloyd Alkire was arrested for driving while intoxicated ("DWI"). Alkire was taken to the Holmes County Jail where he remained all weekend. There was a warrant for Alkire from another jurisdiction. The parties dispute whether Alkire was held on the DWI arrest or the warrant. Alkire was arraigned in Holmes County Court before Judge Jane Irving on Tuesday morning, August 22, 1995 – almost seventy-two hours after his arrest. No probable cause hearing was held prior to the August 22nd hearing.

At a subsequent hearing on September 1, 1995, Alkire pleaded no contest to the DWI charges. He was sentenced to fifteen days in jail and fined $575 and court costs of $45, for a total of $620. Alkire signed a payment contract agreeing to pay $50 monthly installments starting September 11, 1995. No inquiry was made into Alkire's ability to pay, but it appears from the record that he signed the contract voluntarily.

Alkire did not make any payments toward the money owed. Due to Alkire's failure to pay, on November 15, 1995, Judge Irving signed a show cause letter ordering him to appear at a hearing on December 13, 1995 at 11:00 a.m. The letter advised that failure to appear or to pay the amount owed ($635.00)[1] in full would result in the issuance of a bench warrant for Alkire's arrest. Alkire responded with a letter

---

[1] There is no explanation in the record for the discrepancy between $620 and $635.

dated November 22, 1995, which informed Judge Irving that he was disabled and explained his financial difficulties.[2]

Alkire did not appear for the December 13, 1995 hearing. Judge Irving issued a bench warrant for his arrest. Alkire sent a second letter, dated December 15, 1995, explaining his failure to appear at the hearing. The letter stated that he was in the hospital on the hearing date, further explained his financial difficulties, and outlined his inability to find employment.

On May 20, 1996, Alkire was arrested on the outstanding bench warrant. At a hearing on May 21, 1996, Judge Irving found Alkire in contempt and sentenced him to thirty days in jail for "failing to pay any fine or costs." The Judge further stated that Alkire could work off the fine and costs. There was no inquiry at the hearing into Alkire's ability to pay.

Alkire served the thirty day sentence from May 21, 1996, to June 20, 1996. During that time, he worked at a recycling center, receiving the current minimum wage rate of $4.25 per hour, which was credited toward his fine. As a result, according to Alkire, he was able to work off his entire fine. In fact, he says that he worked 4.75 more hours than his fine, but he received no compensation for that extra work. The county's policy does not allow defendants to work off their court costs, so Alkire calculates that after the thirty days in jail, he still owed court costs in the amount of $173.30. However, Holmes County Court records indicate he owed $295.22.

[2]The date stamp indicates that the letter was filed on September 26, 1995, which would be before the court sent the first show cause letter. Alkire argues that this demonstrates he was being proactive about his inability to meet the payment schedule. However, the letter itself is dated November 22, 1995. In addition, the letter refers to "your letter last week," apparently referencing the Judge's show cause letter, which was signed on November 15, 1995. Thus, we will assume that the date stamp was inaccurate and the correct date is November 22, 1995, as listed in the letter.

routine application of the illegal policies ultimately proven by the [defendants' own] depositions," and common questions of law, including issues one through four presented in this appeal.

Our review is for abuse of discretion, and the district court did not abuse its discretion in applying the class action prerequisites. There are enormous variations in the factual and legal backgrounds surrounding the hundreds of cases Alkire asserts might qualify for class membership. A class action cannot be certified unless the resolution of the common issues "will advance the litigation." *Sprague*, 133 F.3d at 397. The district court neither applied the wrong legal standard in examining these two elements, nor did it misapply the correct legal standard. The court correctly placed the burden of demonstrating his right to class certification and concluded that Alkire did not meet his burden. Such a conclusion was not an abuse of discretion.

Even if we agreed with Alkire that the district court abused its discretion in applying the prerequisites, we would still not find in his favor because he has not satisfied either the type II or III requirements for maintaining a class action. Alkire, in his initial motion for class certification, asserted his right to class certification under a type II class action only. As the district court noted, though, the stipulated settlement regarding declaratory and injunctive relief demonstrates that Alkire has "obtained all the relief future potential plaintiffs would want or need." Alkire even agrees with the district court's conclusion on this point, stating the he does not dispute the district court's holding "as to a class of future members . . . . The stipulations do provide sufficient protection for their interests." Thus, Alkire cannot maintain a type II class action.

Alkire's quarrel with the district court, then, is its failure to certify a type III class action, where monetary damages predominate. However, he ignores the requirements of a type III class action, which include a showing that the common questions predominate over the individual ones and that the

declaratory relief. FED. R. CIV. P. 23(b)(2). Type III requires that "the court find[] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

The district court's denial of Alkire's motion for class certification survives abuse of discretion review. On the first prerequisite, numerosity, the district court found it was "highly improbable" that the Alkire could make such a showing. While Alkire postulates that there are hundreds of potential plaintiffs, defendants' search of jail records produced only nine potential class members who were incarcerated due to failure to pay a civil debt or court costs. The district court did not abuse its discretion by believing defendants' asserted number of class members over Alkire's speculative one.

The second prerequisite of Rule 23(a) requires common questions of law and fact among the class, and the third prerequisite looks to the typicality of the claims or defenses of the representative party. The district court found that the potential class members are too diverse to warrant class treatment, that the "varying reasons for the arrests, varying lengths of stay in jail, varying financial situations, vary reasons for contempt adjudications . . . would impact on the amount of damages any individual class member might be entitled to." The district court expressly found that Alkire's proposed class lacks the "common questions of fact" required under the second prong and the "typicality" required under the third prong of Rule 23(a).[7]

Alkire argues that the district court abused its discretion because only one common question of law or fact is required. He points to a common question of fact, "the existence and

---

[7] The fourth element of Rule 23(a), whether the representative parties will fairly and protect the interests of the class, is not addressed by the district court or in the briefs. Therefore, we will also not address it.

Five days after his release, on June 25, 1996, another show cause letter was sent to Alkire for failure to pay the $295.22 amount. The letter set a hearing date of July 24, 1996, and stated that he was required to either pay in full before the date or appear. Alkire again failed to appear. Judge Irving found him in contempt for "failure to obey a previous order" and issued another bench warrant. Alkire was arrested on July 29, 1996, and released on his own recognizance on July 31, 1996. The bond notice set a hearing date of August 28, 1996, to answer the charges of "contempt of court - non-payment of costs." The bond also noted that Alkire must pay the court costs in the amount of $156.60[3] by the next court date.

Alkire sent a letter dated August 27, 1996, which explained that he lost his job as a result of his last stay in jail. He also stated he had just started a new job on August 27th. He said that, since he cannot pay the fines without a job, it would make no sense to arrest him and cause him to lose the new job. Alkire proposed a payment schedule based on his anticipated earnings from the new job.

Alkire again failed to appear at the August 28, 1996, hearing. Judge Irving again held Alkire in contempt and issued a third bench warrant for "failure to obey a previous order of this court." He was arrested on October 22, 1996, on the third warrant. At a hearing on the same day, he was found guilty of contempt and ordered to serve thirty days in the Holmes County Jail. There was no inquiry at the hearing regarding his ability to pay. Also, no credit was given toward the money owed during this period of incarceration.

On October 24, 1996, while Alkire was still serving the thirty day sentence, a third show cause letter was issued demanding payment of $173.30 or an appearance on November 20, 1996. The hearing was continued to December 18, 1996. After the present action was filed, the final show cause hearing date was postponed indefinitely.

---

[3] Again there is no explanation in the record for the discrepancy between this amount and the $295.22 amount.

## III.  PROCEDURAL HISTORY

Plaintiff Alkire filed a complaint and a motion for class certification on December 16, 1996, in the U.S. District Court for the Northern District of Ohio, alleging violations of his constitutional rights for the extended warrantless detention and debt-related imprisonment.  Alkire filed an amended complaint on January 7, 1997.  Alkire filed summary judgment motions against all the defendants on December 1, 1998.  Defendants Holmes County, Holmes County Court, and Sheriff Zimmerly filed summary judgment motions on December 1, 1998.  Judge Irving filed her summary judgment motion on December 3, 1998.

The parties agreed to a stipulation of settlement, but it did not resolve all the issues between the parties; it only purported to settle the declaratory and injunctive portions of the suit.  Thus, in a June 30, 2000, order accepting the stipulation of settlement, the district court dismissed all the pending motions without prejudice to their being resubmitted to reflect the settlement between the parties.  The class certification and summary judgment motions were resubmitted, but the parties merely re-filed their initial motions, so they do not reflect the settlement as ordered by the district court.[4]

The district court denied the motion for class certification on September 26, 2000.  On November 9, 2000, the court denied Alkire's summary judgment motions and granted defendants' summary judgment motions.  Alkire timely appealed the district court's judgment on December 4, 2000.

---

[4]Consequently, it is not clear whether the settlement regarding prospective relief is in effect, or whether Alkire is still seeking declaratory and injunctive relief.  Since the District Court assumed he was not, and the parties did not address declaratory and injunctive relief, we will assume that the settlement resolved the prospective portions of the case.

Sheriff Zimmerly and Holmes County merely execute the orders issued by Judge Irving when incarcerating individuals.  The defendants are not exceeding the § 1983 immunity afforded to them.

### E.   Whether the district court abused its discretion in refusing to certify a class.

Alkire argues that the district court abused its discretion by denying his motion for class certification on damages and restitution.  There are four prerequisites to a class action, found in FED. R. CIV. P. 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Although Rule 23(a)(2) refers to common questions of law or fact, in the plural, there need only be one question common to the class – though that question must be a "common issue the resolution of which will advance the litigation."  *Sprague*, 133 F.3d at 397.  *See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Ultimately, the class may only be certified if, "after rigorous analysis," the district court is satisfied that these prerequisites have been met.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).  The burden is on the plaintiff "to establish his right" for class certification.  *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976).

If Alkire can satisfy the four prerequisites for class certification found in Rule 23(a), then he must show that, in addition, he satisfies one the three types of class actions found in FED. R. CIV. P. 23(b).  Only two of the three types found in Rule 23(b) are relevant here, types II and III.  A type II class action requires that the plaintiff seek primarily injunctive or

583. Alkire's appellate brief documents the policies of the Clerk's Office, including requiring payment of fines and costs within two years, making no inquiry into financial ability to pay, and never having found an inability to pay in the past six years. He also points to the practices and customs of Sheriff Zimmerly, who "never" questions the legality of arrest or incarceration in connection with failure to pay. Alkire argues that these practices and customs further the violation of his right not to suffer incarceration due to indigency.

Unlike the unlawful detention of prisoners after a warrantless arrest for longer than forty-eight hours before a probable cause hearing is held, Sheriff Zimmerly and Holmes County are acting at the direction of Judge Irving and the County Court in enforcing bench warrants and incarcerating prisoners for the term of their criminal contempt sentence. The Clerk's Office may be complicit in blurring the line between failure to appear and failure to pay, but it is ultimately Judge Irving who decides to issue criminal contempt sanctions.

Sheriff Zimmerly, Holmes County, and the Clerk's Office all derive their authority and orders from the actions of Judge Irving. Judge Irving enjoys absolute judicial immunity, *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967), and Sheriff Zimmerly, Holmes County, and the Clerk's Office have quasi-judicial immunity and qualified immunity because they are performing quasi-judicial duties under the direction of a judicial officer. *Bush,* 38 F.3d at 847; *Hunter*, 502 U.S. at 227. These duties are intimately "intertwined with the judicial process" to the degree that "these persons are considered an arm of the judicial officer who is immune." *Bush*, 38 F.3d at 847 (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989)).

Accordingly, the district court's denial of Alkire's summary judgment motion and grant of defendants' summary judgment motion on this issue survive *de novo* review. The Clerk's Office merely refers cases of non-payment to Judge Irving who makes her own determination about how to proceed.

## IV.  STANDARD OF REVIEW

We review the district court's order granting defendants' and denying Alkire's motions for summary judgment *de novo* using the same summary judgment test as the district court. [5] *See Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

We review a class certification decision for abuse of discretion. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc). An abuse of discretion is present when the district court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Schachner v. Blue Cross & Blue Shield*, 77 F.3d 889, 895 (6th Cir. 1996).

## V.  DISCUSSION

There are five issues for our consideration as framed by Alkire. The first four ask whether the trial court erred in failing to find Holmes County and Sheriff Zimmerly in his official capacity liable: (1) under the Fourth Amendment for

---

[5] Alkire is appealing both the grant of defendants' summary judgment motions and the denial of his summary judgment. Normally, the denial of a summary judgment motion indicates that there is a genuine issue of material fact for trial. As such, denials are considered interlocutory appeals from which no appeal is available until the entry of a final judgment after a trial on the merits. *United States v. Florian*, 312 U.S. 656 (1941). "However, when the appeal from a denial of summary judgment is presented together with an appeal from a grant of summary judgment, we have jurisdiction to review the appropriateness of the district court's denial." *Thomas v. U.S.*, 166 F.3d 825, 828 (6th Cir. 1999). The denial of summary judgment based purely on legal grounds is reviewed *de novo. Id.*

the policies and customs that resulted in Alkire's warrantless detention for nearly seventy-two hours; (2) under the Thirteenth Amendment for the policies and customs that resulted in Alkire being arrested three times and jailed for 60 days for failing to pay civil debts owed the county; (3) under due process and equal protection for the policy and custom of not allowing credit toward fines and costs for time served, so that Alkire was incarcerated 16 days in excess of the maximum otherwise permitted under state law; and (4) under due process and equal protection for the policies and customs that resulted in Alkire being arrested three times and jailed for 60 days in connection with non-payment of fines and court costs without any inquiry into his ability to pay. The fifth issue asks whether the trial court abused its discretion by refusing to certify a class action.

**A. Whether the district court erred in finding no violation of Alkire's Fourth Amendment rights not to be held for seventy-two hours on a warrantless arrest.**

Alkire argues that the district court erred as a matter of law by not granting his summary judgment motion that Holmes County and Sheriff Zimmerly were liable under § 1983 for violating his Fourth Amendment right against being detained without a prompt probable cause determination. Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . [or] suit in equity.

42 U.S.C. § 1983. To state a § 1983 claim, Alkire must establish (a) deprivation of a right secured under the Constitution or federal law; and (b) that deprivation was caused by a person acting under color of state law. *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996).

office is the defendant responsible for accounting, crediting, and collecting the fines and costs. The Clerk's office operates in close conjunction with Judge Irving, and as such, is cloaked in her absolute judicial immunity, its own Eleventh Amendment immunity, and its own quasi-judicial immunity. *Mireles*, 502 U.S. at 11; *Mumford,* 105 F.3d at 267. While Sheriff Zimmerly and Holmes County are not protected from § 1983 suits by the Eleventh Amendment, they played no role in the accounting and crediting of Alkire's debt in relation to his time served. Notably, when Judge Irving's order specifically mentioned that Alkire was allowed to work off his fines, he was allowed to do so. In the absence of such an order, he was not allowed to do so. Sheriff Zimmerly was acting on a valid bench warrant that ordered Alkire to be arrested and incarcerated for thirty days. Consequently, he and Holmes County are protected by quasi-judicial immunity and qualified immunity. *Bush*, 38 F.3d at 847; *Hunter*, 502 U.S. at 227.

Accordingly, the district court's denial of Alkire's summary judgment motion and grant of defendant's summary judgment motion as to Holmes County and Sheriff Zimmerly survive *de novo* review. If Alkire were incarcerated for criminal contempt, he is not entitled to monetary credit for his time served. If he were incarcerated for non-payment of fines, neither Sheriff Zimmerly nor Holmes County are liable under § 1983.

**D. Whether the district court erred in finding no violation of Alkire's Fourteenth Amendment right not to lose his liberty due to indigency.**

Alkire argues that the district court erred as a matter of law by not granting summary judgment against Holmes County and Sheriff Zimmerly for violating Alkire's right not to suffer incarceration due to indigency. This is basically a restatement of the argument in Section B, *supra*. As discussed in Section B, both the United States Constitution and Ohio statute prohibit a loss of liberty for those who are unable to pay their civil debts. *Bearden*, 461 U.S. at 674; *Karr*, 413 F. Supp. at

toward his fines and court costs. Once again, to state a § 1983 claim, Alkire must establish (a) deprivation of a right secured under the Constitution or federal law; and (b) that deprivation was caused by a person acting under color of state law. *Brock*, 94 F.3d at 244.

Section 2947.14(D) of the Ohio Revised Code states:

> No person shall be ordered to be committed to a jail or workhouse or otherwise be held in custody in satisfaction of a fine imposed as the whole or a part of a sentence except as provided in this section.    Any person imprisoned pursuant to this section shall receive credit upon the fine at the rate of thirty dollars per day or fraction of a day.  If the unpaid fine is less than thirty dollars, the person shall be imprisoned one day.

OHIO REV. CODE ANN. § 2947.14(D) (amount raised from thirty to fifty dollars per day effective September 6, 2002, *see* 2002 OHIO LAWS 149).

Applying thirty dollars per day to his fine, Alkire argues he was held sixteen days longer than he should have been during his first incarceration.  Then, in addition, he was arrested two more times and incarcerated another thirty days.  The Ohio Supreme Court has held that, as applied to an indigent, imprisonment for non-payment of a fine, crediting only three dollars per day toward the fine, is unconstitutional. *Strattman v. Studt*, 253 N.E.2d 749, 753 (1969). Alkire argues that, "[*a*] *fortiori*, Holmes County's custom of *no* credit is as fundamentally unfair and discriminatory" as three dollars per day.  Defendants reply that Alkire was jailed for criminal contempt rather than failure to pay the fine.  As noted above, criminal contempt is a separate crime from punishment for the underlying offense. *Bagwell*, 512 U.S. at 827-28.

The district court's denial of Alkire's summary judgment motion and grant of defendants' summary judgment motion survive *de novo* review.  Even assuming that Alkire was imprisoned for non-payment of his debts, he is unable to reach the responsible parties in a § 1983 suit.  The Clerk's

As for the first prong of this test, since Alkire has alleged he was held in violation of the Fourth Amendment, we must ask what the Fourth Amendment requires.  It requires a "fair and reliable determination of probable cause," which must be made promptly after a warrantless arrest. *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975).  A judicial determination of probable cause within forty-eight hours of arrest, "will, as a general matter, comply with the promptness requirement of *Gerstein*." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).  If the probable cause hearing is not held within forty-eight hours, the burden shifts to the government "to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.*   The Supreme Court specifically mentioned that intervening weekends do not count as an 'extraordinary circumstance.' *Id.*  On the other hand, if the defendant is held on a valid warrant, he "is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Baker v. McCollan*, 443 U.S. 137, 143 (1979).

Alkire argues he was being held on the warrantless DWI arrest.  Defendants argue he was being held on the warrant from another jurisdiction.  If Alkire is correct, then his Fourth Amendment rights were violated, since he was entitled to a probable cause hearing within forty-eight hours.  However, if defendants are correct, then holding Alkire nearly seventy-two hours, while questionable, does not automatically violate his Fourth Amendment rights.

Even after careful review of the record, it is unclear as to which party is correct.  Alkire states in his brief that the Holmes County records demonstrate that he was held on the DWI arrest.[6]   The defendants counter by citing Sheriff Zimmerly's affidavit, where he states that the State Highway

---

[6]In support, Appellant cites three documents from an evidentiary appendix, which was filed in the district court with his motion for class certification.  While Appellant included some of the evidentiary appendix in the joint appendix provided to this Court, he did not provide the specific pages he cites for this point.

Patrol discovered the outstanding warrant from another jurisdiction at the time of Alkire's arrest. However, Sheriff Zimmerly's statement falls short of stating that the warrant, rather than the DWI arrest, was the reason Alkire was detained seventy-two hours. This dispute between the parties constitutes a material factual dispute, which is inappropriate for resolution on summary judgment.

Applying the second part of the test for a § 1983 claim, we must also examine whether the possible deprivation of Alkire's Fourth Amendment rights was caused by a person acting under color of state law. *Brock*, 94 F.3d at 244. Local governments, counties, and municipalities are considered under this definition of person, and "may be sued for constitutional deprivations." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). State governments, and their "arms, officers, and instrumentalities," however, are immune from suits for money damages under the Eleventh Amendment. *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997) (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1997)). In Ohio, a county common pleas court "is not a segment of county government, but an arm of the state for purposes of section 1983 liability and Eleventh Amendment immunity analysis." *Mumford*, 105 F.3d at 269.

As for those actors not immune under the Eleventh Amendment, § 1983 claims cannot be premised on a theory of *respondeat superior*. *Monell,* 436 U.S. at 691. Instead, the plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," and the municipality through this policy must have been the "'moving force' behind the injury alleged." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403, 404 (1997). Where a government "custom has not received formal approval through the body's official decisionmaking channels," such a custom may still be the subject of a § 1983 suit. *Monell*, 436 U.S. at 690-91.

Applying this test, Judge Irving and the Holmes County Court are protected by Eleventh Amendment immunity, since

sentenced him to thirty days for "failing to pay any fine or costs."

Despite the conflicting rationales given for the orders, Judge Irving is shielded from suit by absolute judicial immunity. Judicial immunity is immunity from suit, and is only overcome for non-judicial acts, or where the judge acted in complete absence of jurisdiction. *Mireles*, 502 U.S. at 11-12. This immunity extends to the Clerk's Office, which processed her orders and bench warrants. *Foster v. Walsh,* 864 F.2d 416, 417 (6th Cir. 1988) ("a clerk who issues a warrant at the direction of a judge is performing a function to which absolute immunity attaches."). Sheriff Zimmerly, who executed the judge's orders, and Holmes County, as his employer, also enjoy this immunity. *Bush*, 38 F.3d at 847 ("enforcing or executing a court order is intrinsically associated with a judicial proceeding"). Thus, Alkire's § 1983 suit is unable to reach Holmes County and Sheriff Zimmerly for monetary damages.

Accordingly, the district court's denial of Alkire's summary judgment motion and grant of defendants' summary judgment motion with regard to the Thirteenth Amendment claim survive *de novo* review. While there appear to be possible constitutional violations, the district court recognized the problem and encouraged a settlement agreement to resolve these practices. The resulting stipulated settlement appears to end the questionable practices and obviates the need for injunctive relief. Damages are clearly barred due to Judge Irving's absolute judicial immunity, and the immunity extends to the other defendants who were executing her orders.

**C.   Whether the district court erred in finding no violation of Alkire's due process and equal protection rights where defendants failed to allow credit toward fines and costs for time served.**

Alkire asserts that the district court erred as a matter of law in not granting summary judgment against Holmes County and Sheriff Zimmerly for violation of his rights to due process and equal protection by not crediting his time served in jail

imprisoned for civil debt. As stated above, to state a § 1983 claim, Alkire must establish (a) deprivation of a right secured under the Constitution or federal law; and (b) that deprivation was caused by a person acting under color of state law. *Brock*, 94 F.3d at 244.

The constitutional right against imprisonment for civil debt is well established. The State may not "'impos[e] a fine as a sentence and then automatically conver[t] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.'" *Bearden v. Georgia,* 461 U.S. 660, 667 (1983) (quoting *Tate v. Short*, 401 U.S. 395 (1971)). Ohio law is even more stringent:

> no member of a class of judges can, under the Ohio law, impose a fine in a criminal case until he has assured himself that the defendant has made a knowing and intelligent waiver of his right to have his ability to pay the fine determined.

*Karr v. Blay*, 413 F. Supp. 579, 583 (N.D. Ohio 1976). This rule does not apply to willful refusal to pay a fine, only inability to pay or indigency. *Bearden*, 461 U.S. at 668 (citing *Williams v. Illinois*, 399 U.S. 235, 242 n.19 (1970)). Criminal contempt, though, is a separate crime from the punishment on the underlying offense; it is designed to be punitive and "vindicate the authority of the court." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28 (1994).

Applying the law to these facts, first, the lack of a judicial determination of Alkire's ability to pay appears to be a violation of Ohio law. Second, even though it is appropriate to impose a jail term for criminal contempt, it is unconstitutional to impose a jail term when an indigent person is unable to pay a fine. Judge Irving's orders give conflicting rationales for her bench warrants and contempt orders. For example, the first bench warrant was issued for Alkire's "failure to obey a previous order of this court" and "fail[ure] to appear." However, her first contempt order

Ohio law considers county courts arms of the state for this purpose. However, neither Sheriff Zimmerly nor Holmes County have Eleventh Amendment immunity, since Sheriff Zimmerly is a county employee and Holmes County can be liable for constitutional deprivations where a county policy or custom was the moving force behind the deprivation.

According to Alkire, in 1994, after a new Holmes County jail opened, Sheriff Zimmerly established the policy of detaining persons in the county jail until their initial appearance, since they now had adequate jail space. The record reflects that, because the Holmes County Court is a part-time court, the first available court date was often not until Tuesday mornings; court was never held on weekends or holidays. As a result, any warrantless arrest from late afternoon Friday through Sunday morning would very likely run afoul of the forty-eight hour requirement mandated by *Riverside*. This is the very sort of 'policy or custom' that was envisioned in *Brown*. Liability extends to Holmes County because any policy of county employee Sheriff Zimmerly on holding detainees until trial was also a county policy, and this policy was the 'moving force' behind the injury alleged. It is not necessary that Holmes County officially endorsed this policy through legislative action for it to carry its imprimatur.

In addition, neither Sheriff Zimmerly nor Holmes County can claim absolute, quasi-judicial, or qualified immunity for their policy that resulted in the detention of prisoners beyond the forty-eight hour threshold. As for absolute immunity, the proponent seeking such immunity bears the burden of establishing the justification for it. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432, 433 n.4 (1993) ("The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant."). One type of absolute immunity is judicial immunity. *Mireles v. Waco*, 502 U.S. 9, 9 (1991) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit

for money damages.") (collecting cases). However, neither Judge Irving nor the Clerk's Office appears to have played any role in the decision to detain prisoners beyond forty-eight hours. Nor was Sheriff Zimmerly acting under the official orders of Judge Irving in carrying out the policy.

As for quasi-judicial immunity, which is extended to those persons performing tasks so intertwined with the judicial process that they are considered an arm of the judicial officer, *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994), it does not apply here. According to *Bush*:

> The Supreme Court has endorsed a "functional" approach in determining whether an official is entitled to absolute immunity. Under this approach, a court "looks to 'the nature of the function performed, not the identity of the actor who performed it.' " For example, a prosecutor who undertakes acts in the preparation or initiation of judicial proceedings is entitled to absolute immunity. On the other hand, when a prosecutor performs administrative acts unrelated to judicial proceedings, qualified immunity is all that is available.

*Id.* (citations omitted). Again, Sheriff Zimmerly's policy was not dictated by Judge Irving, and it can be described as administrative in nature. The record demonstrates that it was his decision, beginning in 1994, to keep those arrested in jail until their initial appearance. Judge Irving often does not discover that someone has been arrested until they arrive for a hearing before her.

Finally, we conclude that neither Holmes County nor Sheriff Zimmerly enjoy qualified immunity from this claim. According to the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity involves a two-step inquiry. First, the court must determine whether, based upon the applicable law,

the facts viewed in the light most favorable to the plaintiff show that the defendants violated his constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a favorable view of the facts does demonstrate a constitutional violation, the next step is to ask whether the right was clearly established at the time of the defendants' actions. *Id.*

Qualified immunity, of course, offers no protection for Holmes County. It is well established that municipalities are not entitled to qualified immunity. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992). We also conclude that Sheriff Zimmerly is not entitled to qualified immunity as to the plaintiff's Fourth Amendment claim. We have already determined that, if plaintiff's version of the facts is believed, a constitutional violation has occurred. There is little doubt, moreover, that the relevant law was clearly established at the time of defendants' actions. The constitutional violation in the instant case follows directly from the Supreme Court's 1991 decision in *McLaughlin*. Since the events at issue in the instant case occurred more than four years after *McLaughlin* was decided, it seems apparent that the plaintiff's constitutional right to receive a probable cause determination within forty-eight hours of his arrest was clearly established at the time of his arrest.

Therefore, the district court's dismissal on this issue is reversed. Because there are genuine issues of material fact concerning Alkire's Fourth Amendment claim, however, the district court's denial of Alkire's motion for summary judgment is affirmed. This case is remanded for further proceedings to determine whether Alkire was being held on the arrest warrant or the DWI arrest.

## B. Whether the district court erred in finding no violation of Alkire's Thirteenth Amendment right not to be imprisoned for a civil debt.

Alkire argues that the district court erred as a matter of law in not granting his summary judgment motion that Holmes County and Sheriff Zimmerly were liable under § 1983 for violating his Thirteenth Amendment right not to be