**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0568n.06

No. 09-4230

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 30, 2010**
LEONARD GREEN, Clerk

| | |
|---|---|
| MARK E. FRONTERA, | ) |
| | ) |
| **Plaintiff-Appellant,** | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE SOUTHERN |
| | ) DISTRICT OF OHIO |
| CITY OF COLUMBUS DIVISION | ) |
| OF POLICE, et al., | ) |
| | ) **O P I N I O N** |
| **Defendants-Appellees.** | ) |
| | ) |

Before: GUY, MOORE, and GRIFFIN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Mark E. Frontera, a police officer with the

City of Columbus Division of Police ("CPD"), appeals from the grant of summary judgment in his

42 U.S.C. § 1983 action to the CPD and the other individual CPD-affiliated defendants in their

official capacities (collectively, "Defendants"). Frontera alleges that the individual defendants, in

line with the policies, practices, and customs of the CPD, deprived him of his freedom of speech and

right to associate and assemble with other citizens and deprived him of his personal property without

due process, in violation of the First and Fourteenth Amendments, when they terminated his position

as the volunteer Post Advisor for the CPD-sponsored Columbus Division of Police Law

Enforcement Explorer Post ("Explorer Post"), a career-education program operated by a subsidiary

of the Boy Scouts of America ("BSA"), and required that he turn over any records associated with

the Explorer Post. Frontera further appeals from the district court's denial of his Federal Rule of

Civil Procedure 60(b)(6) motion related to the district court's earlier dismissal of his individual-capacity claims based on the statute of limitations for § 1983 claims.

## I. BACKGROUND FACTS & PROCEDURE

Frontera, a CPD Police Officer since approximately 1997, began to volunteer as part of the CPD Explorer Post in January 1998, and he eventually took over as the Post Advisor, a position that must be held by a police officer. Although the CPD is the sponsoring organization, Explorer Posts are separate non-profit organizations operated by the Learning for Life organization, a subsidiary of the BSA, as career-education programs for youths between the ages of fourteen and twenty-and-one-half. The CPD's Explorer Post is not included in the CPD's organizational chart, but it has established a "Constitution and By-Laws" and a set of "Rules and Regulations" and has historically been considered within the purview of the CPD's Training Bureau. (The now-disbanded Police Athletic League, whose responsibilities included operating the Explorer Post, reported to the Training Bureau.)

On or about December 13, 2004, an Explorer Post Assistant Advisor, CPD Officer Kimberly Wilkinson, reported to Lieutenant Robert Meader, a Training Bureau officer, that she had received information from an Explorer Post member that Frontera might have had inappropriate contact with Explorer Post members. Specifically, Wilkinson conveyed that a male member had spent the night at Frontera's home, in violation of Learning for Life's policy against one-on-one contact between adults and Explorer Post members, and that a female member had reported that Frontera may have had inappropriate contact with a non-Explorer Post member, whom she had brought to Explorer Post events. Meader shared these allegations with the CPD's Internal Affairs Bureau ("IAB"), which began an investigation. On December 14, Meader, acting pursuant to orders from the Training

2

Bureau's commander, removed Frontera as Post Advisor and ordered Frontera not to have direct or indirect contact with current or past Explorer Post members or with current advisors and not to attend any Explorer Post functions until further notice (the "no-contact order"). Subsequently, Meader ordered Frontera

> to turn in all of the Explorer records you currently possess. This includes but is not limited to: (1) Training documents, (2) Financial records, (3) Minutes of meetings, (4) File[s] that detail promotion and demotion of explorer ranks, (5) Complete rosters, (6) All uniforms that are currently being stored in the lockers at 10 sub, (7) Any other paperwork, items, materials, keys or chattels as it relates to the Columbus Police Explorers.

Doc. 23 (Amended Compl. ¶ 54). Frontera complied "under protest" because he believed that any such records were his personal property. *Id.* at ¶ 57.

On March 6, 2005, the BSA, through Scout Executive Ronald Green, sent a letter to Frontera "to revoke and/or deny any registration you may have in the Boy Scouts" and to request that he "sever any relationships" with the BSA, Learning for Life, and the Explorer Post programs. Doc. 54-12 (Def. Summ. J. Mot., Ex. 12 at 15). Although permitted to request a review of this action, Frontera did not seek reconsideration.

The IAB investigation was finalized on March 1, 2006, when the CPD Deputy Director in Frontera's chain of command, who had final authority in discipline matters, determined that only one of the nine allegations of misconduct should be "sustained" and that all others should be determined to be either "unfounded" or "not sustained," contrary to the investigating IAB officers' recommendation that eight be "sustained" and that the ninth be labeled "unfounded." But because the written reprimand for this misconduct charge would have been entered outside the time deadline in the union's collective bargaining agreement, Frontera received no discipline. Frontera did not file

3

any grievances concerning the investigation with the CPD or his union, and the investigation did not affect his pay or benefits, ability to work special duty jobs, or ability to carry his gun or badge.

On December 12, 2006, Frontera filed the instant suit against the CPD and the individual defendants, all current or former CPD police officers of various ranks, alleging that the no-contact order and the order to return Explorer Post records constituted violations of his First and Fourteenth Amendment rights under 42 U.S.C. §§ 1983 and 1985 and asserting state-law defamation. After Frontera amended his complaint, the Defendants responded with a motion to dismiss, which the district court partially granted. The district court concluded that the statute of limitations barred Frontera's individual-capacity claims against the individual defendants (allowing the official-capacity claims to survive) and also precluded his state-law defamation claim, and that Frontera failed to plead sufficiently a § 1985 conspiracy.

After discovery, the Defendants successfully moved for summary judgment on Frontera's remaining § 1983 claims alleging that the CPD failed to train its officers and that the no-contact order and order to return Explorer Post records violated Frontera's First Amendment speech and association rights and his Fourteenth Amendment due process, equal protection, and privacy rights. The district court concluded that Frontera failed to support his allegations of constitutional violations and that, even if he were able to demonstrate that the Defendants violated his constitutional rights, Frontera had failed to meet his burden to support with specific facts his allegation of a CPD policy, practice, or custom that caused a constitutional violation. Frontera then filed a Federal Rule of Civil Procedure 59(e) motion to reconsider the court's summary-judgment opinion and a Rule 60(b)(6) motion for relief from both that order and the court's earlier ruling on the motion to dismiss. The district court denied both motions, concluding for the former that Frontera sought only to relitigate

the issues already decided and for the latter that the Lilly Ledbetter Fair Pay Act of 2009 did not alter the court's rejection of Frontera's continuing-violation allegation such that he could pursue delayed individual-capacity claims.

Frontera now timely appeals from the district court's orders granting summary judgment and denying the post-trial motions.

## II.  DISCUSSION

### A.  Summary Judgment Standard of Review

We review a district court's decision granting summary judgment de novo.  *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 373 (6th Cir. 2009).  As we have explained:

> "The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by 'showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted).  In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited.  Rather, the evidence should be viewed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Thus, the facts and any inferences that can be drawn from those facts[ ] must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)."

*Biegas*, 573 F.3d at 374 (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)).  Once the moving party has satisfied his or her burden, "the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  "The respondent must 'do more than simply show that there is some

5

metaphysical doubt as to the material facts.'" *Street*, 886 F.2d at 1480 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

On appeal, Frontera has narrowed his argument to focus on his § 1983 First Amendment claims of speech and association rights and his Fourteenth Amendment claim related to the deprivation of property, as well as the district court's denial of his Rule 60(b)(6) motion. Frontera concedes that his § 1983 claims against the individual defendants in their official capacities and against the CPD must satisfy the standard for municipal liability, which requires that he establish first that he was deprived of a constitutional right and second that this occurred as a result of state action. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). "The United States Supreme Court has held that municipalities may be held liable under § 1983 when the injury inflicted is a result of 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Radvansky*, 395 F.3d at 311 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In addition, "there must be a direct causal link between the policy and the alleged constitutional violation such that the municipality's deliberate conduct can be deemed the moving force behind the violation." *Id.* (internal quotation marks and alteration omitted).

**1. Existence of Genuine Issues of Material Fact**

Frontera asserts first that there is a genuine issue of material fact regarding the CPD's authority to remove him from his Explorer Post position that precludes summary judgment on all of his constitutional claims. The district court disagreed, finding that Meader had undisputed authority to remove Frontera based on Green's explicit affidavit statement that *either* Learning for Life *or* the sponsoring organization—here, the CPD—may remove a Post Advisor and based on CPD

6

Officer Jason Jackson's affidavit statement that it was the CPD's historical practice to supervise its Explorer Post through CPD's Training Bureau. From our review of the record, we conclude that Frontera has not "ma[d]e an affirmative showing with proper evidence" that the CPD's authority presents a genuine dispute of fact. *Alexander*, 576 F.3d at 558.

Frontera has not pointed us to evidence that would establish that the district court's statement of facts is genuinely in dispute or that the district court engaged in impermissible evidence weighing or credibility determinations. Frontera relies on a perceived contradiction between, on the one hand, what the district court relied upon and, on the other hand, CPD Chief of Police James Jackson's deposition testimony that the Explorer Post is not technically part of the CPD and the statement in the Explorer Post's Constitution and Bylaws that it is a non-profit organization. Even "assum[ing] the truth of the non-moving party's evidence and constru[ing] all inferences from that evidence in the light most favorable to the non-moving party," *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006), these items do not actually contradict Green's averment that the CPD, through its Training Bureau, had authority to remove Frontera from the Post Advisor position. Neither Green nor the district court disputed that the Explorer Post was a separate non-profit that was merely affiliated with the CPD as its sponsoring organization. Although it may be reasonable to infer from solely the facts that Frontera cites that the CPD could exercise no authority over the Explorer Post, the *addition* of the undisputed facts that the district court relied upon—and that Frontera does not actually contradict—shows that the CPD was able to remove the Post Advisor, negating any reasonable inference of a lack of authority that could give rise to a genuine issue of material fact.

7

## 2. State Action for Municipal Liability: CPD Polices, Practices, or Customs

We will assume without deciding that Frontera has established that the no-contact order and the order to return the Explorer Post records violated his constitutional rights for purposes of this appeal, satisfying his first hurdle to bringing a municipal-liability claim. But to surmount the second hurdle, Frontera must demonstrate that a responsible state actor was executing government policy or custom—"he must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire*, 330 F.3d at 815. Taking the most charitable view of Frontera's argument on appeal, it seems that Frontera's claim is that the CPD had a custom of allowing an "undefined nexus" between it and the Explorer Post that allowed the CPD's Training Bureau to supervise the Explorer Post without authority, and that the CPD was indifferent to this custom, which allowed the Training Bureau, through Meader, to enter orders that violated Frontera's constitutional rights.

A "municipal policy" includes "'a policy statement, ordinance, regulation, or decision officially adopted and promulgated.'" *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 690), *cert. denied*, 129 S. Ct. 44 (2008). "An actionable 'custom,' in contrast, 'has not received formal approval through . . . official decisionmaking channels.' A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue." *Id.* (quoting *Monell*, 436 U.S. at 690–91). As we have explained,

> A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.), *cert. denied*, 510 U.S. 826 (1993). In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out

state policy." *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940). It must reflect a course of action deliberately chosen from among various alternatives. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. *Feliciano*, 988 F.2d at 655.

*Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507–08 (6th Cir. 1996). Most fatal to Frontera's claimed custom is the fact that the record supports that the Training Bureau did have the authority to remove him from his Post Advisor position and had a historical practice of supervising the Explorer Post, as well as the uncontested fact that the CPD had authority to conduct internal personnel investigations. "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences," which must be "a violation of a particular constitutional or statutory right." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407, 411 (1997) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *accord Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006), *cert. denied*, 549 U.S. 1114 (2007). This requires a plaintiff to show that the facially constitutional custom is "consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers." *Gregory*, 444 F.3d at 752. Frontera has not attempted to make such a showing. Even when viewed in the light most favorable to Frontera, the list of individual actions that Frontera relies upon in this case are insufficient to establish an actionable "custom" or to create a genuine issue of material fact as to whether the CPD had such a custom. Although "[a] single act by a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action ordered' may suffice in demonstrating that policy or custom," *Cady v. Arenac County*, 574 F.3d 334, 345 (6th Cir. 2009) (quoting *Pembaur v. City of*

9

*Cincinnati*, 475 U.S. 469, 481 (1986)), "where the policy [or custom] relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation," *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (plurality opinion); *see also Radvansky*, 395 F.3d at 311 ("By itself, 'the wrongful conduct of a single officer without any policy-making authority did not establish municipal policy.'" (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992))); *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000) (en banc) ("Under appropriate circumstances, even a single act or decision may qualify as an official government policy, though it be unprecedented and unrepeated. But in any case, acts will only be construed as official policy when they are those of a body or an official 'responsible for establishing final government policy respecting such activity . . . .'" (quoting *Pembaur*, 475 U.S. at 483)). We therefore conclude that the district court did not err in granting summary judgment to the Defendants.

**B.  Post-Trial Rule 60 Motion:  Application of the Lilly Ledbetter Fair Pay Act of 2009**

Frontera argues that the Lilly Ledbetter Fair Pay Act of 2009 ("LLA") expanded the continuing-violations doctrine in a way that eviscerates the district court's reliance on Supreme Court and Sixth Circuit continuing-violation precedents to dismiss his individual-capacity claims, and therefore the district court erred in denying his Rule 60(b)(6) motion for relief from judgment. We review a denial of a Rule 60(b)(6) motion for relief from judgment for an abuse of discretion, and "will reverse only when [we are] firmly convinced that a mistake has been made"; thus, "a party must demonstrate that the district court committed a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous

findings of fact." *ACLU v. McCreary County, Ky.*, 607 F.3d 439, 450 (6th Cir. 2010) (internal quotation marks omitted); *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 454 (6th Cir. 2008). Frontera cannot meet this standard because he has not asserted claims within the purview of the LLA—Frontera's claims are in no way related to discrimination in employment, compensation-related or otherwise, under Title VII, the ADEA, the ADA, or the Rehabilitation Act. *See* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009). The district court recognized that a change in the law could support Rule 60(b)(6) relief, but it determined that Frontera's claims did not benefit from the LLA and denied the motion. We conclude that the district court's denial was not an abuse of its discretion in this case.

### III. CONCLUSION

For the above reasons, we **AFFIRM** both the district court's grant of summary judgment to the Defendants and its denial of Frontera's Rule 60(b)(6) motion.

11